

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and, STATE OF ILLINOIS for the use and benefit of IOWA BASED MILLING, LLC, an Iowa limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> FISCHER EXCAVATING, INC., CONCRETE STRUCTURES OF THE MIDWEST, INC., WESTERN SURETY COMPANY, and CONTINENTAL CASUALTY COMPANY, <br><br> Defendants. | Case No. 4:12-cv-4082-SLD-JAG |

## ORDER

Defendant Concrete Structures of the Midwest, Inc. ("Concrete Structures") won a contract to resurface a runway at Quad Cities International Airport ("QCIA"). Concrete Structures hired a subcontractor, Defendant Fischer Excavating, Inc. ("Fischer Excavating"), who then allegedly hired Plaintiff Iowa Based Milling, LLC, in an oral agreement, to mill the runway on several occasions. Concrete Structures obtained a bond on the project from Defendant Continental Casualty Company ("Continental") and Fischer Excavating obtained a bond on the project from Western Surety Company ("Western Surety"). Afterward, Fischer Excavating allegedly shorted Iowa Based Milling more than $85,000 in fees. Iowa Based Milling filed a seven-count amended verified complaint seeking to recover from Concrete Structures or Fischer Excavating or the bonds provided in their favor. Defendants filed individual motions to dismiss for failure to state a claim, which, if granted, would eliminate all but the first count. For the following reasons, Defendants' Motion to Dismiss, ECF Nos. 45, 46, 47, 48, are DENIED.

1

# BACKGROUND[1]

The State of Illinois and United States awarded a contract to resurface Runway 9/27 at the QCIA. As a contractual requirement, Concrete Structures obtained a bond from Continental with Illinois as the obligee. Concrete Structures hired Fischer Excavating as a subcontractor, and required that it obtain a bond, which it did from Western Surety. The Continental-Concrete Structures bond provides that it "shall inure to the benefit of any person . . . to whom any money may be due for payment of material or objects used in the work and for all labor performed in the work, whether by subcontractor or otherwise," and that person may bring suit on the bond to recover. Iowa Based Milling believes that the Western Surety-Fischer Excavating bond similarly permits anyone not paid for work on the runway project to sue on the bond to recover payment, and makes unpaid contractors parties to the bond.

Fischer Excavating hired Iowa Based Milling through an oral agreement, which came about in this way. Iowa Based Milling provided a quote for the runway milling work to Fischer Excavating. In Fall 2010, a Fischer Excavating representative contacted Peter Simon—owner, sole member, and manager of Iowa Based Milling—to ask whether Simon was aware that the project required milling fourteen inches of material. Simon responded that Iowa Based Milling lacked the twelve-inch mill necessary to mill at that depth, and assumed this meant any offer by Fischer Excavating on the quote would be withdrawn. However, in February 2011, Fischer Excavating informed Simon that Iowa Based Milling "got the job." Simon contacted a Fischer Excavating representative to reiterate that Iowa Based Milling lacked the necessary equipment

---

[1] In a motion to dismiss, all well-pleaded allegations in a complaint are taken as true and viewed in the light most favorable to the plaintiff. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012). Therefore, the material in this section is drawn from the Amended Verified Complaint, ECF No. 44, and attached documents incorporated therein.

and therefore could not perform at the price originally quoted. Fischer Excavating representatives responded that only the middle of the runway was fourteen inches thick and the peripheral portions were thinner, and that Fischer Excavating was not worried about Iowa Based Milling's performance ability and would "work with" Iowa Based Milling on any problems. Simon understood this to mean that, where Iowa Based Milling could not mill at the quoted price, Fischer Excavating would obtain another milling subcontractor or increase payment for Iowa Based Milling's work.

Fischer Excavating mailed Simon a contract to sign and mail back. Simon contacted a Fischer Excavating representative and refused to sign a contract for work Iowa Based Milling may not be capable of performing. Weeks later, a Fischer Excavating representative asked Simon about the unreturned contract, and Simon again said that the Iowa Based Milling could not meet the work specifications or perform at the quoted price without losing money on the project. Fischer Excavating encouraged Iowa Based Milling to come to the worksite and determine whether its equipment was suitable. After two days of milling, Simon told an onsite Fischer Excavating representative that Iowa Based Milling could not mill for the quoted price and was going to stop work.

On April 13, 2011, Simon met with Wayne and Frank Fischer of Fischer Excavating, who said they were bringing in another subcontractor to finish the milling, but asked Iowa Based Milling to work the remainder of the week, which Iowa Based Milling did. On April 18, 2011, Simon returned to the worksite to remove Iowa Based Milling's equipment and a Fischer Excavating representative asked Simon to work again that day; Iowa Based Milling did and then demobilized. Approximately two weeks later, Joe Fischer of Fischer Excavating called Simon "pleading" for Iowa Based Milling to return. Iowa Based Milling agreed to if Fischer

3

Excavating paid $650 per hour and supplied all fuel and water required by Iowa Based Milling for the project. Joe Fischer agreed. Simon also asked about pay for Iowa Based Milling's previous work, and Fischer told Simon to submit a pay request and Fischer Excavating would pay Iowa Based Milling shortly thereafter.

Iowa Based Milling milled on May 16, 25, and 31, 2011, and submitted invoices for previous work. On each day, Simon asked a Fischer Excavating representative about payment. When Iowa Based Milling billed for its May 31, 2011 work on June 6, 2011, a Fischer Excavating representative said Fischer Excavating was itself awaiting payment from Concrete Structures and assured Simon that Iowa Based Milling would be paid. On June 20, 2011, Iowa Based Milling received partial payment for its April 2011 milling. Simon asked about the remaining invoices, and a Fischer Excavating representative said that Illinois' fiscal year ended in June and "they were holding everything" until then, a statement Iowa Based Milling claims was false. Fischer Excavating agents also claimed that a temporary state government shutdown had prevented Fischer Excavating from receiving payment, and so it could not yet pay its subcontractors. The Illinois Department of Aeronautics later provided to Simon proof of its disbursements to Fischer Excavating indicating that the state regularly paid Fischer Excavating. According to Iowa Based Milling, Joe Fischer and the other Fischer Excavating employees offering these excuses for delayed payment, along with claims that Fischer Excavating did not know what it owed Iowa Based Milling, knew these statements were false or "did not make the necessary effort" to determine their truthfulness.

Iowa Based Milling milled again on August 25, 2011, and September 1, 2011, billing a few days after each job. On September 9, 2011, Simon again inquired about payment, and a Fischer Excavating representative said he would speak to Fischer Excavating's Tony Gilbertson

4

and then reply.  Simon called twice more and received no return call.  Iowa Based Milling did not work on the runway again after September 1, 2011.

In total, Iowa Based Milling submitted eight invoices to Fischer Excavating for a total of $121,692.85, along with supporting foreman worksheets.  Fischer Excavating paid only $36,511.18, leaving $85,181.67 unpaid.  On September 22, 2011, Joe Fischer called Simon and said Fischer Excavating only owed Iowa Based Milling $10,815.00 and would send Iowa Based Milling the milling quantities.  Fischer said that if Iowa Based Milling would not accept this amount, he would "take down" Iowa Based Milling "for breach of contract."  Iowa Based Milling received no payment thereafter.  The QCIA runway project was completed, the work accepted, and Fischer Excavating paid in whole or in part.  Iowa Based Milling's counsel served notices of bond claims upon Ann Schneider, acting Secretary for the Illinois Department of Transportation, on October 26, 2011, and November 17, 2011.  Iowa Based Milling also contacted counsel representing Continental and Western Surety to demand payment for Iowa Based Milling's unpaid work.

Iowa Based Milling claims it is entitled to the outstanding $85,181.67 along with eighteen percent interest.  On August 31, 2012, Iowa Based Milling filed suit against the four Defendants under the Miller Act, 40 U.S.C. § 3131, and the Illinois Public Construction Bond Act ("Little Miller Act"), 30 ILCS 550/1–550/2, and also asserted claims for breach of contract, fraud and misrepresentation, unjust enrichment, and quantum meruit.  The Court has both federal question and diversity jurisdiction over this controversy.  On September 26, 2013, the Court dismissed most of Iowa Based Milling's claims due to their failure to adequately notify Defendants of the nature of the claims against each.  With the Court's leave, Iowa Based Milling

filed an Amended Verified Complaint, which each Defendant moved to partially dismiss on November 7, 2013. Those motions are now before the Court.

**DISCUSSION**

Count I[2] alleges that Fischer Excavating breached its oral contract with Iowa Based Milling. Am. Compl. ¶¶ 49–56. Count II is a breach of contract claim against Concrete Structures based on the terms of the Continental-Concrete Structures bond. *Id.* ¶¶ 57–69. Count III alleges unjust enrichment and quantum meruit against Fischer Excavating and Concrete Structures. *Id.* ¶¶ 70–76. Count IV claims that Fischer Excavating engaged in fraud and misrepresentation. *Id.* ¶¶ 77–94. Count V asserts a claim under the Miller Act for recovery from the Continental-Concrete Structures bond. *Id.* ¶¶ 95–104. Count VI asserts similar bond claims under the Illinois "Little Miller Act" against the Continental-Concrete Structures and Western Surety-Fischer Excavating bonds. *Id.* ¶¶ 105–113. Finally, Count VII is a breach of contract claim to recover from the Western Surety-Fischer Excavating bond to the extent that it falls outside of the requirements of the state or federal Miller Acts. *See id.* ¶¶ 114–126. Except for Count I, which no one has moved to dismiss, each Defendant separately moves to dismiss all claims against it.

**I. Standard on Motion to Dismiss**

The Federal Rules of Civil Procedure require a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim to relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

---

[2] Although Iowa Based Milling does not number its counts in its Amended Verified Complaint, the Court does so here for clarity and concision.

reasonable inference that the defendant is liable for the misconduct alleged." *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Seventh Circuit has identified the practical requirements of *Twombly* and *Iqbal* for federal pleading:

> First, a plaintiff must provide notice to defendants of her claims.  Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim.  Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.

*Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

At the motion to dismiss stage, the presence of an affirmative defense does not in general invalidate a claim for relief, because such defenses usually rely on facts not yet before the court. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012).  An exception to this rule occurs where "the allegations of the complaint set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005).  Therefore, "when all relevant facts are presented," a court may dismiss a case based on an affirmative defense prior to discovery.  *Brownmark Films, LLC*, 682 F.3d at 690.

## II. Count II: Breach of Contract By Concrete Structures and Continental

Concrete Structures and Continental argue that Count II should be dismissed because Iowa Based Milling is time-barred from suing for recovery from the bond Continental provided for Concrete Structures.  Concrete Mot. Dismiss ¶¶ 1–12, ECF No. 45; Continental Mot. Dismiss ¶¶ 2–13, ECF No. 46.

### A. Legal Framework

The Illinois Little Miller Act mandates that a public entity require its contractors to post bonds to ensure their payment of subcontractors. *A.E.I. Music Network, Inc. v. Bus. Computers,*

*Inc.*, 290 F.3d 952, 953 (7th Cir. 2002). The Act provides that a subcontractor may not sue on such a bond to recover for furnishing labor or materials "later than one year after the date of the furnishing of the last item of work or materials by the Claimant." 30 ILCS 550/2. This provision previously established a six-month limitations period, but it was amended on August 22, 2011, to provide a full year to bring suit, effective January 1, 2012. 2011 Ill. Legis. Serv. 97-487 (West). Where a limitations period has not yet expired prior to amendment, "'the amendatory act controls all actions and remedies not previously barred.'" *Guzman v. C.R. Epperson Constr., Inc.*, 752 N.E.2d 1069, 1076 (Ill. 2001) (quoting *Arnold Eng'g, Inc. v. Indus. Comm'n*, 380 N.E.2d 782, 784 (Ill. 1978)).

Moreover, the Act only establishes minimum protections, which parties to a bond may agree to expand. *See Carroll Seating Co. J.J.L. Inc. v. Verdico*, 861 N.E.2d 1045, 1049 (Ill. App. Ct. 2006) (quoting *William J. Templeman Co. v. U.S. Fid. & Guar. Co.*, 739 N.E.2d 883, 887 (Ill. App. Ct. 2000)). Although the Act's provisions are deemed inserted in every public construction bond, whether expressly incorporated or not, "the contractor and its surety are free to contract with the public entity for additional liability which exceeds the statutory provisions." *Aluma Sys., Inc. v. Frederick Quinn Corp.*, 564 N.E.2d 1280, 1297–98 (Ill. App. Ct. 1990) (citing *Ill. State Toll Highway Comm'n v. M.J. Boyle & Co.*, 186 N.E.2d 390, 396 (Ill. App. Ct. 1962)).

### B. Analysis

Defendants maintain that the State of Illinois accepted all work on the project on or before December 31, 2011. Concrete Mot. Dismiss ¶ 8; Continental Mot. Dismiss ¶ 9. Iowa Based Milling did not file its first complaint until August 31, 2012, more than six months after Illinois accepted the work, and therefore its suit must be barred, Defendants argue. Concrete

Mot. Dismiss ¶ 10; Continental Mot. Dismiss ¶ 11. On its face, this argument fails because it ignores the statutory amendment. According to Defendants' own timeline, a six-month limitations period would not yet have expired when the Illinois Legislature's amendment of 30 ILCS 550/2 took effect. *See* 30 ILCS 550/2. Because Iowa Based Milling's claim was therefore not yet time barred, it would be governed by the amended one-year limitations period under Defendants' asserted facts. *See Guzman*, 752 N.E.2d at 1076.

Moreover, the circumstances here do not justify abandoning the basic rule against dismissing complaints on affirmative-defense grounds. *See Brownmark Films, LLC*, 682 F.3d at 690. Because the Little Miller Act leaves parties to the bond free to contract for greater liability than the Act requires, determining the applicable limitations period is not as simple as looking up the statute and then counting the days between the state's acceptance of the work and Iowa Based Milling's filing suit. *See, e.g.*, *Carroll Seating Co. J.J.L. Inc.*, 861 N.E.2d at 1049. Iowa Based Milling did not allege that Illinois accepted the runway work on a particular date, and Defendants do not provide evidence to substantiate their assertion that acceptance occurred by December 31, 2011. Additionally, the bond itself does not specify a period in which an aggrieved party must sue, *see* Am. Compl., Ex. F, ECF No. 44-1 at 50, and any extrinsic evidence establishing the parties' intent with regard to a limitations period is not yet before the Court. Because the pleadings have not therefore presented all the relevant facts, *see Brownmark Films, LLC*, 682 F.3d at 690, it would be inappropriate for the Court to adjudicate Defendants' timeliness defense at this stage. Concrete Structures and Continental's Motions to Dismiss are denied as to Count II.

### III. Count III: Unjust Enrichment and Quantum Meruit Against Fischer and Concrete

As grounds for dismissal, Fischer Excavating and Concrete Structures maintain that Count III fails to plead all requisite elements of an unjust enrichment claim, and inconsistently alleges the existence of a contract. Concrete Mot. Dismiss ¶¶ 13–21, 25–29; Fischer Mot. Dismiss ¶¶ 1–13, ECF No. 47. Concrete Structures also argues that Iowa Based Milling does not allege that Concrete Structures had a separate legal obligation toward Iowa Based Milling that it breached, as required for an unjust enrichment claim. Concrete Mot. Dismiss ¶¶ 22–24.

#### A. Legal Framework

In quasi-contract claims, such as unjust enrichment and quantum meruit, there is no actual agreement between parties, but the law nevertheless implies a duty so as to prevent injustice. *Hayes Mech., Inc. v. First Indus., L.P.*, 812 N.E.2d 419, 426 (Ill. App. Ct. 2004). To state a claim of unjust enrichment, the plaintiff must allege that the defendant unjustly retained a benefit to the plaintiff's detriment and such retention "'violates the fundamental principles of justice, equity, and good conscience.'" *Vill. of Bensenville v. City of Chi.*, 906 N.E.2d 556, 593 (Ill. App. Ct. 2009) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989)). The mere fact that a defendant benefits is insufficient unless the defendant also engaged in improper conduct or other circumstances similarly justify imposition of restitution. *See Hayes Mech., Inc.*, 812 N.E.2d at 429–30.

The Seventh Circuit has noted an inconsistency as to whether Illinois courts recognize unjust enrichment as a separate cause of action or require that it be tied to an underlying tort, contract, or statutory claim. *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011). *Cleary* observed that the Illinois Supreme Court appears to recognize an independent cause of action for unjust enrichment. *Id.* (citing *Raintree Homes, Inc. v. Vill. of Long Grove*, 807 N.E.2d

439, 445 (Ill. 2004) ("Here, plaintiffs have no substantive claim grounded in tort, contract or statute; therefore the only substantive basis for the claim is restitution to prevent unjust enrichment.")). More recently, however, an Illinois appellate court indicated the opposite. *Id.* (citing *Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920, 928 (Ill. App. Ct. 2009) ("Unjust enrichment is not a separate cause of action that, standing alone, will justify an action for recovery. . . . When an underlying claim of fraud, duress or undue influence is deficient, a claim for unjust enrichment should also be dismissed.")) Without definitely resolving this issue, *Cleary* offered a way to reconcile the cases. *Id.* at 517. The court noted that a defendant's enrichment is often argued to be "unjust" due to some improper conduct that may also form the basis for a tort, contract, or statutory claim against the defendant. *Id.* Where this occurs, failure to support one claim will likely mean there is no basis for another premised on the same alleged misconduct. *See id.* In other words, an unjust enrichment claim does not require an underlying cause of action for breach of a separate legal duty; however, where the plaintiff alleges such, "unjust enrichment will stand or fall with the related claim." *See id.*

Quantum meruit means "as much as he deserves." *First Nat'l Bank of Springfield v. Malpractice Research, Inc.*, 688 N.E.2d 1179, 1185 (Ill. 1997) (quotation omitted). To recover under quantum meruit, a plaintiff must show that he performed services, the benefit of those services was conferred upon the defendant, and it would be unjust to permit the defendant to retain that benefit without compensating the plaintiff. *Id.* Because a quasi-contract claim presupposes the absence of a contract, when one exists, a plaintiff may not bring a claim for unjust enrichment or quantum meruit if the contract governs that issue. *See Keck Garrett & Assocs., Inc. v. Nextel Commc'ns, Inc.*, 517 F.3d 476, 487 (7th Cir. 2008).

Pleading requirements in federal courts are set by federal law, not the law of the state where the federal court sits. *Johnson v. Hondo, Inc.*, 125 F.3d 408, 417 (7th Cir. 1997). Federal courts may not impose heightened pleading requirements not found in the Federal Rules of Civil Procedure. *Id.* (citing *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993)). Unlike the fact-pleading approach of Illinois courts, the Federal Rules do not require plaintiffs to plead the elements of legal theories along with facts matching each element. *Christensen v. Cnty. of Boone, Ill.*, 483 F.3d 454, 465–66 (7th Cir. 2007) (citing Fed. R. Civ. P. 8); *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (noting that *Iqbal* and *Twombly*'s plausibility pleading requirement does not "reinstate the old fact-pleading system"). Additionally, a party may plead claims in the alternative, "regardless of consistency." Fed. R. Civ. P. 8(d)(2)–(3). While parties "need not use particular words to plead in the alternative, they must use a formulation from which it can be reasonably inferred that this is what they were doing." *Holman v. Indiana*, 211 F.3d 399, 407 (7th Cir. 2000).

### B. Analysis

Iowa Based Milling alleges that it provided $85,181.67 in labor, services, and materials which Concrete Structures and Fischer Excavating refused to pay for, but which directly benefitted them by enabling them to fulfill and be compensated for their contractual duties to reconstruct the QCIA runway. Am. Compl. ¶¶ 70–76. These allegations support a claim that Defendants unjustly retained a benefit to Iowa Based Milling's detriment. Iowa Based Milling does not expressly state, along with directly corresponding factual allegations, that Defendants' failure to pay for this benefit "'violates the fundamental principles of justice, equity, and good conscience.'" *See Vill. of Bensenville*, 906 N.E.2d at 593. It does not have to, however, to survive a motion to dismiss. Litigants in this Court are not bound by Illinois fact-pleading

12

procedure, and therefore do not need to allege the individual elements of legal theories along with corresponding facts. *See Christensen*, 483 F.3d at 465–66. Instead, to survive a motion to dismiss under Rule 12(b)(6), a federal-court plaintiff need only generally allege factual content sufficient to support a reasonable inference that the defendant is liable for legally cognizable misconduct. *See Iqbal*, 556 U.S. at 678.

Iowa Based Milling meets this standard. In addition to Defendants' alleged groundless refusal to pay for services received, Iowa Based Milling alleges that Fischer Excavating repeatedly requested continued work by Iowa Based Milling, despite Iowa Based Milling's expressed misgivings, while providing Iowa Based Milling with false excuses for Fischer Excavating's failure to pay that nevertheless implied that payment was impending. *See* Am. Compl. ¶¶ 28–38. Iowa Based Milling also alleges that Concrete Structures obtained a bond from Continental for the express purpose of ensuring payment of service providers on the runway project, *id.* ¶ 64, yet refused to pay Iowa Based Milling from this specifically designated fund, *id.* ¶75. The Complaint does not merely allege that Fischer Excavating and Concrete Structures retained the benefit of Iowa Based Milling's work, but that they engaged in misconduct by soliciting Iowa Based Milling's work and encouraging the reasonable assumption that Iowa Based Milling would be paid for its service, and then denying payment for a portion of the work Iowa Based Milling performed. *See Hayes Mech., Inc.*, 812 N.E.2d at 429–30. These allegations support the reasonable inference that Fischer Excavating and Concrete Structures acted inequitably and in bad conscience. *See Vill. of Bensenville*, 906 N.E.2d at 593; *see also PFC Geoffrey Morris Mem'l Found. v. Vill. of Gurnee*, 2011 IL App. (2d) 101075-U, 2011 WL 10457428, at ¶ 52 (Ill. App. Ct. Oct. 7, 2011) (holding that plaintiff stated claim for unjust

enrichment "where the question is whether it is unjust and unconscionable to allow the [defendant] to retain the benefits it received without offering any form of compensation").

Iowa Based Milling's complaint therefore supports a freestanding cause of action for unjust enrichment. Contrary to Concrete Structures' assertion, Illinois law does not require that a separate, breached legal obligation support an unjust enrichment claim; state precedent merely indicates that unjust enrichment and another claim premised on the same alleged misconduct will rise and fall together. *See Cleary*, 656 F.3d at 516–17; *Raintree Homes, Inc.*, 807 N.E.2d at 445. Illinois law does, however, preclude Iowa Based Milling from recovering for unjust enrichment or quantum meruit if a contract governs its relationship with Defendants regarding the conduct at issue. Iowa Based Milling therefore potentially imperils its quasi-contract claims by incorporating all previous allegations into Count III, Am. Compl. ¶ 70, including its allegations that Fischer Excavating and Concrete Structures breached contracts obligating them to pay for Iowa Based Milling's work, *id.* ¶¶ 49–69.

Under federal pleading rules, however, Iowa Based Milling may plead inconsistent claims in the alternative, and need only formulate its allegations in such a way that the Court can reasonably infer that that is what it is doing. *See Holman*, 211 F.3d at 407. Iowa Based Milling alleges contract-based and quasi-contract claims in separate sections of its complaint under separate headings; none of its allegations in the unjust enrichment and quantum meruit section reference any contract. Despite Iowa Based Milling's apparent oversight of incorporating preceding paragraphs alleging a contract, the Court can reasonably infer from the formulation of Iowa Based Milling's allegations that it is alleging contract and quasi-contract claims in the alternative. Accordingly, Fischer Excavating and Concrete Structures' Motions to Dismiss are denied as to Count III.

## IV. Count IV: Fraud and Misrepresentation Against Fischer Excavating

Fischer Excavating argues that Count IV must be dismissed because it fails the heightened pleading standard for fraud claims, and because Iowa Based Milling's allegations do not meet all the elements of fraud. Fischer Mot. Dismiss ¶¶ 14–20.

### A. Legal Framework

Under Illinois law, claims for common-law fraud and fraudulent misrepresentation share the following elements: "1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (5) damage to the plaintiff resulting from such reliance." *Doe v. Dilling*, 888 N.E.2d 24, 35–36 (Ill. 2008); *Avon Hardware Co. v. Ace Hardware Co.*, 998 N.E.2d 1281, 1287–88 (Ill App. Ct. 2013). The tort of negligent misrepresentation shares these elements, with two differences: (1) a defendant need only be negligent in ascertaining the truthfulness of the false statement, not actively aware of its falsity; and (2) the plaintiff must allege that the defendant has a duty to communicate accurate information to the plaintiff. *Avon Hardware Co.*, 998 N.E.2d at 1288 (citing *Bd. of Educ. Of City of Chi. v. A, C & S, Inc.*, 546 N.E.2d 580, 591 (Ill. 1989)). Even with fraudulent misrepresentation, a defendant need not strictly know that his statement is false: "representations made in reckless disregard or culpable ignorance of their truth or falsity" suffice. *Peter J. Hartmann Co. v. Capital Bank & Trust Co.*, 694 N.E.2d 1108, 1115 (Ill. App. Ct. 1998).

The Federal Rules of Civil Procedure require that a party "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This typically requires providing the "who, what, when, where and how" of the fraud, *Anchorbank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011), which means alleging: (1) the identity of the person who made the

15

misrepresentation, (2) the time, place, and content of the misrepresentation, and (3) the method by which the misrepresentation was communicated to it. *Windy City Metal Fabricators v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008) (citation omitted). The degree of particularity required varies based on the circumstances of an individual case. *Anchorbank, FSB*, 649 F.3d at 615. By demanding detailed allegations, Rule 9(b) "requires the plaintiff to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate." *Camasta v. Jos. A. Bank Clothiers, Inc.*, No. 13-2831, 2014 WL 3765935, at *4 (7th Cir. Aug. 1, 2014) (internal quotation omitted). Knowledge, intent, and other mental states "may be alleged generally." Fed. R. Civ. P. 9(b); *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

**B. Analysis**

The false statements Fischer Excavating allegedly made to Iowa Based Milling fall into two categories: (1) promises Iowa Based Milling would be paid in full "soon" that Fischer Excavating did not intend to keep, and (2) claims that Fischer Excavating had not yet been paid by Illinois, and therefore could not pay Iowa Based Milling. *See* Am. Compl. ¶¶ 78–84. In describing the circumstances of these statements, Iowa Based Milling sometimes attributes them to a named Fischer Excavating agent, and sometimes to an unnamed Fischer Excavating "representative." *Id.* ¶¶ 33–38. Iowa Based Milling also provides the approximate date,[3] the content, and the method of communicating the individual statements. *Id.* Thus, when only a "representative" is named, Fischer Excavating should be able to easily deduce from its employee records for that period who the particular employee making each statement was. Further, by

---

[3] Iowa Based Milling does not always directly state that the communication occurred on a certain date. Am. Compl. ¶¶ 35–37. However, where it does not, Iowa Based Milling associates the communication with specifically dated work activity and accompanying invoice, in individual Complaint paragraphs. This supports the inference that Fischer Excavating's representation occurred on or near the same date as the work and/or invoice submission alleged in the preceding sentence. *See id.*

contrast with Iowa Based Milling's fraud claim in its first complaint—which the Court dismissed on Rule 9(b) grounds, Sept. 26, 2013 Order 5, ECF No. 43— Iowa Based Milling now alleges a factual basis for its claim that Fischer Excavating's statements that it had yet to be paid by Illinois were knowingly false. *See* Am. Compl. ¶¶ 83–85. While perhaps not as detailed as Fischer Excavating would prefer, Iowa Based Milling's description of the circumstances of the false statements and the reasons they were false is sufficiently specific to put Fischer Excavating on notice of the claims against it, *see Brooks*, 578 F.3d at 581, and illustrate that Iowa Based Milling investigated the matter before irresponsibly leveling an unsupported claim of fraud, *see Camasta*, 2014 WL 3765935, at *4. Fleshing out the complete picture of the alleged fraud is appropriately a matter for discovery.

Fischer Excavating also argues that "no single phrase" in the Complaint supports reasonable reliance or intent to induce action, two requisite elements of fraud. Fischer Mot. Dismiss ¶ 20. As discussed, the Federal Rules do not require a plaintiff to plead legal theories with facts supporting each element, *see Christensen*, 483 F.3d at 465–66, but only provide sufficient factual allegations to support a reasonable inference that the defendant engaged in actionable misconduct, *see Iqbal*, 556 U.S. at 678. Iowa Based Milling's allegations that Joe Fischer said it would be promptly paid for past work upon submitting a pay request, Am. Compl. ¶ 33, and that Iowa Based Milling was in fact partially paid, *id.* ¶ 36, support a plausible inference that its reliance on Fischer Excavating's apparent ability and willingness to fully compensate Iowa Based Milling for additional work was reasonable. Further, Iowa Based Milling alleges that in between the milling jobs, Fischer Excavating assured Iowa Based Milling that full payment was imminent, and then later requested additional work by Iowa Based Milling. Am. Compl. ¶¶ 33–38. Iowa Based Milling also alleges that it would not have taken the

additional jobs, at Fischer Excavating's request and for its benefit, but for these assurances. *Id.* ¶ 87. These allegations support a reasonable inference that these allegedly false assurances were made at least in part to induce Iowa Based Milling to continue work on Fischer Excavating's behalf.

Finally, Fischer Excavating maintains that Iowa Based Milling insufficiently pleads that Fischer Excavating's representatives knew their statements to be false. In the Complaint paragraphs at issue, Iowa Based Milling pleads that a Fischer Excavating agent knew the statement was false or, alternatively, did not undertake the necessary effort to determine if it was false. *See* Am. Compl. ¶¶ 81 (second), 82, 84. As stated, the Federal Rules permit Iowa Based Milling to plead inconsistently in the alternative so long as Iowa Based Milling indicates that that is what it is doing, which it did here. *See Holman*, 211 F.3d at 407. Moreover, full consciousness of falsity is not required under Illinois law. Iowa Based Milling's allegations permit a reasonable inference that Fischer Excavating's representatives spoke in, at least, reckless disregard or culpable ignorance of the alleged fact that their excuse—lack of or delayed payment by the state—was false. *See Peter J. Hartmann Co.*, 694 N.E.2d at 1115.

Count IV pleads fraud with sufficient Rule 9(b) particularity and provides factual allegations supporting a reasonable inference that Fischer Excavating is liable for this tort. Accordingly, Fischer Excavating's Motion to Dismiss is denied as to Count IV.

**V.     Count V: Federal Miller Act Claim Against Continental-Concrete Structures Bond**

Continental argues for dismissing Count V on the grounds that the Miller Act does not govern the bond it provided for Concrete Structures. Continental Mot. Dismiss ¶¶ 14–20, ECF No. 46.

### A. Legal Framework

To protect subcontractors working on projects funded by the federal government, who cannot obtain mechanic's liens as with private projects, Congress passed the Miller Act, 40 U.S.C. § 3131. *Automatic Sprinkler Corp. of Am. v. Darla Environmental Specialists Inc.*, 53 F.3d 181, 182 (7th Cir. 1995). The Miller Act requires that a contractor furnish performance and payment bonds for any contract over $100,000 "for the construction, alteration, or repair of any public building or public work of the Federal Government." 40 U.S.C. § 3131(b); *see U.S. for Use of Owens-Corning Fiberglass Corp. v. Brandt Constr. Co.*, 826 F.2d 643, 647 n.4 (7th Cir. 1987) (noting Miller Act applies to "contractors working on federal construction projects"). An unpaid subcontractor can seek compensation from a contractor's bond posted under the Miller Act. *U.S. for Use & Benefit of Westinghouse Elec. Supply Co. v. Sisson*, 927 F.2d 310, 312 (7th Cir. 1991).

### B. Analysis

Iowa Based Milling alleges that the federal government and State of Illinois bid out the runway resurfacing contract. Am. Compl. ¶ 13. The bond provided by Continental for Concrete Structures names as party the Illinois Department of Transportation, Division of Aeronautics, as agent of the Metropolitan Airport Authority of Rock Island County. Am. Compl., Ex. F, ECF No. 44-1 at 50. However, the bond also references Federal Project Number 3-17-0068-67. *Id.* Continental provides no explanation for why the QCIA runway reconstruction would have a federal project number if it was not at least in part a federal project. Nor did Continental attach the contract for the QCIA work to its motion to dismiss to show the purported absence of federal government involvement in this project. *See 188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) ("[D]ocuments attached to a motion to dismiss are considered part of the

pleadings if they are referred to in the plaintiff's complaint and are central to his claim."). Given the uncontroverted federal project number and the Court's obligation at this stage to take Iowa Based Milling's allegations as true and accept reasonable inferences therefrom, *see, e.g.*, *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010), there is insufficient basis for dismissing Iowa Based Milling's Miller Act claim. Continental's Motion to Dismiss is denied as to Count V.

## VI. Counts VI–VII: State Law Claims Against Continental and Western Bonds

Continental and Western Surety argue that Count VI, Iowa Based Milling's "Little Miller Act" claim, must be dismissed as time barred under the Act's alleged six-month statute of limitations. Continental Mot. Dismiss ¶¶ 2–13; Western Mot. Dismiss ¶¶ 2–9. Similarly, Western Surety argues for dismissing Count VII—a claim against the Western Surety-Fischer Excavating bond that Iowa Based Milling alleges was not posted pursuant to either state or federal Miller Acts—on the grounds that the Little Miller Act's limitations period also governs suits on this bond. Western Mot. Dismiss ¶¶ 10–14. The Court rejects these arguments for the same reasons that prevent dismissal of Count II: Illinois extended the limitations period and the Court may not properly rule on the timeliness defense at this stage of the proceedings. Accordingly, Continental and Western Surety's Motions to Dismiss are denied as to Counts VI and VII.

## CONCLUSION

Defendants' Motions to Dismiss, ECF Nos. 45, 46, 47, 48, are DENIED.

Entered this 17th day of September, 2014.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE