**IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF ILLINOIS for the use and benefit of Iowa Based Milling, LLC an Iowa Limited Liability Company,  Plaintiff,  v.  FISCHER EXCAVATING, INC., and CONCRETE STRUCTURES OF THE MIDWEST, INC., and WESTERN SURETY COMPANY and CONTINENTAL CASUALTY COMPANY,  Defendants. | Case No. 4:12-cv-04082-JEH |

**Order**

A bench trial was held in this matter from May 15, 2017 to May 16, 2017.  At the conclusion of all the evidence, the Court directed the parties to file post-trial briefs by July 19, 2017 setting forth proposed findings of fact and conclusions of law.  The Court has reviewed all of the evidence as well as the parties' Trial Briefs (Docs. 110, 112) and the Court finds as set forth below.[1]

**I[2]**

The Plaintiff Iowa Based Milling, LLC (Iowa Based Milling) filed its original Complaint against Defendants Fischer Excavating, Inc. (Fischer Excavating), Concrete Structures of the Midwest, Inc. (Concrete Structures), Western Surety

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge in this matter.  (Doc. 72).
[2] While this case has an exceptionally long procedural history, the Court will keep it as concise as possible.

Company (Western Surety), and Continental Casualty Company (Continental Casualty) on August 31, 2012.[3] The Defendant Concrete Structures won a contract to resurface a runway at Quad Cities International Airport. Defendant Concrete Structures hired a subcontractor, Defendant Fischer Excavating, who then allegedly hired the Plaintiff via an oral agreement to mill the runway on several occasions. Defendant Concrete Structures obtained a bond on the project from Defendant Continental Casualty and Defendant Fischer Excavating obtained a bond on the project from Defendant Western Surety. Thereafter, Fischer Excavating allegedly failed to pay Plaintiff Iowa Based Milling $85,181.67 for its work at the Airport. The Plaintiff set forth its claims in the original Complaint as follows: breach of contract; quantum meruit and unjust enrichment; fraud in the inducement and misrepresentation; and claims under the Miller Act payment bond and under the Illinois Public Construction Bond Act (Little Miller Act). (Doc. 1). All four Defendants filed Motions to Dismiss the original Complaint on January 22, 2013. That same day, Defendant Fischer Excavating filed a Counterclaim against Plaintiff Iowa Based Milling for breach of contract, breach of contract on a theory of duress, and fraud by economic duress. (Doc. 27).

On September 26, 2013, the Court entered an Order (Doc. 43) dismissing Counts I-IV of the original Complaint with the exception of Count I (breach of contract) against Defendant Fischer Excavating and Count II (quantum meruit and unjust enrichment) against Defendants Fischer Excavating and Concrete Structures. The Court further ordered that should the Plaintiff Iowa Based Milling

---

[3] While the allegations of Iowa Based Milling's Complaint have been previously set forth in detail, it is necessary to do so once again for the sake of completeness in this Order.

amend its complaint, it needed to clearly explain what causes of action were being brought against which Defendants.

On October 17, 2013, the Plaintiff filed an Amended Verified Complaint (Doc. 44) alleging the following seven counts: breach of contract against Defendant Fischer Excavating; breach of contract against Defendants Concrete Structures and Continental Casualty based upon a third-party beneficiary contract or a first-party contract analysis; quantum meruit and unjust enrichment against Defendants Fischer Excavating and Concrete Structures; fraud and misrepresentation against Defendant Fischer Excavating; bond claims under the Miller Act against Defendant Continental Casualty for the failures of Defendant Fischer Excavating and Defendant Concrete Structures; bond claims under Illinois's "Little Miller Act" against Defendants Continental Casualty and Western Surety; and breach of contract and/or bond claim under the bond obtained by Defendant Fischer Excavating from Defendant Western Surety. On November 7, 2013, all four Defendants filed Motions to Dismiss the Amended Verified Complaint, and Defendant Fischer Excavating filed a Verified Answer to Count I of Plaintiff's Amended Complaint and Affirmative Defenses to that count (Doc. 49). On September 17, 2014, the Court entered an Order (Doc. 56) denying all four Defendants' Motions to Dismiss in their entirety.

A discovery schedule was put in place on October 31, 2014. On February 6, 2015, Plaintiff Iowa Based Milling filed a Motion for Judgment on the Pleadings (Doc. 61) requesting the Court to dismiss Defendant Fischer Excavating's counterclaims II (breach of contract on a theory of duress) and III (fraud by economic duress) of its Counterclaim. The Court granted via written Order (Doc. 70) the Plaintiff's Motion and dismissed with prejudice Defendant Fischer

3

Excavating's second and third counterclaims. On July 15, 2015, the parties consented to the jurisdiction of the Magistrate Judge in this matter. A settlement conference before a different Magistrate Judge was held on October 8, 2015, but no settlement was reached at that time. In the months intervening October 2015 and January 2017, various discovery and sanctions issues were raised and resolved. On January 24, 2017, Plaintiff Iowa Based Milling and Defendants Concrete Structures and Continental Casualty filed a Stipulation of Dismissal with Prejudice and Order of Dismissal (Doc. 96). The Stipulation expressly provided that, "This dismissal does not release and/or dismiss Iowa Based Milling, LLC's claims against Defendant Fischer Excavating, Inc. or Defendant Western Surety Company or any claims brought against Iowa Based Milling, LLC, by Defendants Fischer and/or Western Surety Company." (Doc. 96 at pg. 2). Thereafter, the Plaintiff's attempts to defeat the two remaining Defendants Fischer Excavating and Western Surety by way of default judgment, striking pleadings, and motions in limine were all unsuccessful.

Finally, on May 1, 2017, the parties filed a proposed Final Pre-Trial Order (Doc. 109) and the next day they filed their Trial Briefs (Docs. 110, 112). In its Trial Brief, Plaintiff Iowa Based Milling framed the issues for trial as follows: Iowa Based Milling entered into a contract with Defendant Fischer Excavating, but the contract was not in written form; a material breach of a contract excuses performance; Defendant Fischer Excavating should pay for Iowa Based Milling's attorney fees on account of its bad faith, deceit, and misrepresentation; interest is properly awarded to Iowa Based Milling under the terms of the written invoices submitted to Fischer Excavating which have been incorporated into the contract; if the Court determines that no contract existed between Iowa Based Milling and

Fischer Excavating then Iowa Based Milling asks for relief under the legal doctrines of unjust enrichment and/or quantum meruit; and Iowa Based Milling's claim for false/fraudulent misrepresentation is recognized in Illinois thus this state law cause of action includes a right to ask for exemplary or punitive damages.

Defendants Fischer Excavating and Western Surety framed the issues for trial as follows: Plaintiff Iowa Based Milling breached the contract between Defendant Fischer Excavating and Iowa Based Milling; legal fees claimed by the Plaintiff against Fischer and Western Surety; pre-judgment interest claimed by Plaintiff Iowa Based Milling against Fischer and Western Surety; treble damages for fraud and misrepresentation claimed by Iowa Based Milling against Fischer; and bond claim against Western Surety.

At the time the parties commenced trial on May 15, 2017, the following claims remained: Plaintiff Iowa Based Milling's claim for breach of contract against Defendant Fischer Excavating; Iowa Based Milling's claim for quantum meruit and unjust enrichment against Defendant Fischer; Iowa Based Milling's claim for fraud and misrepresentation against Defendant Fischer; Iowa Based Milling's bond claims under the "Little Miller Act" against Defendant Western Surety; Iowa Based Milling's breach of contract and/or bond claim against Defendant Western Surety; and Defendant Fischer Excavating's Counterclaim for breach of contract against Plaintiff Iowa Based Milling. The parties' numerous affirmative defenses as set forth in the Plaintiff's Answer and Affirmative Defenses to Counterclaim (Doc. 38) and Defendant Fischer Excavating's Amended Answer (Doc. 106) remained as well.

## II

The Court finds the following facts by a preponderance of the evidence.

This case involves a construction dispute that arose from the Quad City International Airport Runway 9/27 Reconstruction Project (hereinafter "the Project"). The Project consisted of resurfacing a runway, installation of new lighting for the runway, installation of a new drainage system and landscaping. The general contractor for the Project was Concrete Structures. Fischer Excavating was a first tier excavating contractor that was responsible for milling of the runway, grading of the shoulders, the underground pipe work, concrete and paving removal. Iowa Based Milling is an Iowa limited liability company based in Dubuque, Iowa. Peter Simon is the sole member of Iowa Based Milling and has been since 2010. Iowa Based Milling is in the business of pavement milling work which involves operating machines which grind and remove layers of asphalt and concrete typically for the preparation for pavement resurfacing projects.

Iowa Based Milling received an invitation to submit a proposal for milling work on the Project from Fischer Excavating. The invitation identified the project name and listed the engineering firm for the Project. Peter Simon gave his assistant, Karen Hoefler, his notes concerning proposals for several projects, including the Project at issue here, and he included a proposal for the Project with the other notes he gave her. (Tr. 15:22-16:15) Karen Hoefler sent the proposal to Fischer Excavating. *Id.* Peter Simon did not plan to submit a proposal for the Project until he had received a set of project plans. (Tr. 15:22-16:15) The proposal that Ms. Hoefler transmitted is Exhibit 1. (Tr. 17:3-10). That bid is dated June 8, 2010. In the bid, Iowa Based Milling offered to mill 143,800 yards of payment scarification (or milling) for the Airport Project, at a unit price of $1.05 per square

yard. The proposal also contained a mobilization charge of $2,400.00. Iowa Based Milling also proposed to provide their own fuel and water in this bid.

Several months went by without action on Iowa Based Milling's bid until, in November 2010, Mike Doty of Fischer Excavating called Peter Simon to inquire whether Iowa Based Milling had a 12 foot milling machine. During Peter Simon's initial telephone conversation with Mike Doty in November 2010, Mike Doty informed Peter Simon that a 12 foot milling machine with a 3/8 inch cut was required to meet project specifications. Mike Doty also informed Peter Simon that the specifications required milling to a depth of 14 inches. Peter Simon responded that he was unaware of those specifications because he had not seen the plans for the Project. Peter Simon communicated to Mike Doty during the same telephone call that he did not have the equipment required to meet the specifications of the job.

Peter Simon's next contact with Fischer Excavating was in January 2011 when he received a telephone call from Tony Gilbertson. Tony Gilbertson informed Peter Simon that Iowa Based Milling was awarded the job, although by now it had been nearly eight months since Iowa Based Milling's bid had been sent to Fischer Excavating and no written notice of acceptance of the bid had been signed and sent to Iowa Based Milling up to that time. Peter Simon informed Tony Gilbertson that the proposal was sent by accident and that Iowa Based Milling did not have the equipment capable of doing the job.

Tony Gilbertson called Peter Simon again in March 2011 and invited Peter Simon to a preconstruction meeting. Peter Simon attended the preconstruction meeting and concluded that Iowa Based Milling's ten year old machines would be unable to perform the required work. Peter Simon shared these concerns with

Fischer Excavating personnel at the preconstruction meeting and in response, Fischer Excavating proposed that Iowa Based Milling start performing the milling work on the "haul road" and if Iowa Based Milling could not perform the work, Iowa Based Milling could leave the job. Peter Simon agreed.

Thus, an oral contract was formed at the preconstruction meeting with Tony Gilbertson and Joe Fischer of Fischer Excavating and Peter Simon for Iowa Based Milling. The terms of the agreement were as follows: Iowa Based Milling would mobilize to the Project to mill the required material for Fischer Excavating to construct the haul road at the price submitted on Iowa Based Milling's proposal and if Iowa Based Milling was unable to perform the work, it could quit the job. (Tr. 27:23-29:1; 29:24-30:20) There was no written agreement memorializing this oral contract. Iowa Based Milling's original bid was never signed and returned to Iowa Based Milling before the litigation ensued. (P. Exh. 1; Tr. 29:2-16)

Although Fischer Excavating attempted to persuade Iowa Based Milling to commit in writing to perform the entire job pursuant to Iowa Based Milling's original bid and sent Peter Simon a written contract to that effect, Peter Simon on behalf of Iowa Based Milling refused to sign the written contract, insisting that he would only agree to perform the work on a trial basis as agreed upon in the oral contract reached at the preconstruction meeting.

Iowa Based Milling began work on April 11, 2011. Problems began almost immediately. The Teamsters Union and the Operators Union requested that six men be employed to operate the milling machine. Yet, Iowa Based Milling normally operates each machine with two men. Furthermore, the Teamsters Union required a union driver for the Iowa Based Milling water truck. Iowa Based Milling and the unions did reach a compromise whereby Iowa Based Milling could

8

use two of its own personnel on each machine and then hire one additional Teamster plus one union driver for the water truck. Additionally, on April 13, 2011, the engine on one of Iowa Based Milling's two milling machines failed.

After the Iowa Based Milling machine failed, Peter Simon told Frank Bolenski of Concrete Structures that the job was not working for him and that Iowa Based Milling was leaving the job. Frank Bolenski contacted Wayne Fischer for a meeting with Peter Simon at the onsite job trailer. Peter Simon told Wayne Fischer that he wasn't making any money and Iowa Based Milling was pulling off the job. (Tr. 43:21-46:12) Wayne Fischer asked Peter Simon if he could remain on the job for the remainder of the week so that Fischer Excavating could complete the haul road. Peter Simon agreed to do that.

On April 18, Peter Simon returned to the Project to demobilize and Wayne Fischer asked Peter to stay onsite to mill one more day. Peter Simon agreed. Peter Simon understood that under the terms of his first oral agreement with Fischer Excavating made at the preconstruction meeting, that the work from April 11 through April 18, 2011 was performed at a proposal price of $1.05 per square yard. (Tr. 49:7- 51:23) Peter Simon prepared an invoice which calculated his work at $0.45 per square yard. (P. Exh. 7, p. Iowa Based Milling 1) This $0.45 per square yard was determined by taking the $1.05 per square yard at 14 inches in depth from the proposal and prorating that price to the 6 inch milling depth that he performed between April 11 and April 18, 2011 and then multiplying that by the number of square yards milled. (Tr. 49:7-51:23) The invoice also included a $1,200 mobilization charge that related to the mobilization charge quoted in Plaintiff's Exhibit 1. *Id*

In May 2011, Joe Fischer called Peter Simon and asked him to return to help Fischer Excavating finish the job. Peter Simon agreed to return to the Project only if Fischer Excavating would pay Iowa Based Milling $650 per hour, supply the fuel

and water and hire any additional personnel the union required at Fischer Excavating's expense. (Tr. 53:3-17)    Based on this new agreement, Iowa Based Milling returned to the Project on May 16, 2011.   The Foreman Worksheets compiled by Iowa Based Milling confirm many of the terms of the oral agreement between Peter Simon and Joe Fischer. (P. Exh. 7)   The Foreman Worksheets indicate that Iowa Based Milling returned on May 16, 2011 with only two employees, Peter Simon and his son, Austin Simon.  The Foreman Worksheets also indicated that all fuel and water was supplied by Fischer Excavating beginning with his return to the Project on May 16, 2011 all the way through Iowa Based Milling's final work on the Project on September 1, 2011.  (P. Exh. 7, p. Iowa Based Milling 159-Iowa Based Milling 183)

The second invoice Iowa Based Milling submitted to Fischer Excavating confirmed that Iowa Based Milling was now working on an hourly basis.  (P. Exh. 7, p.158)  In the May 25, 2011 invoice, Iowa Based Milling billed Fischer Excavating at a rate of $600 per hour.  (P. Exh. 7, p. Iowa Based Milling 158) Peter Simon indicated that the invoice(s) dated May 25, 2011 contained an error in the billing rate in that Iowa Based Milling mistakenly billed at an hourly rate of $600 per hour instead of the agreed upon rate of $650 per hour due to miscommunication between his office assistant, Karen Hoefler, but was corrected on later billings.  (Tr. 57:3-11; P. Exh. 7, p. Iowa Based Milling 158) Further, Peter Simon noted that the mobilization charge shown on the invoices was not specifically discussed or agreed upon by Fischer Excavating but was one-third of his normal mobilization. (P. Exh. 7, p. Iowa Based Milling 158; Tr. 56:18-58:3).

Fischer Excavating soon fell behind in paying Iowa Based Milling. Peter Simon became concerned because he had not been paid for his April or May work. Peter Simon reported several conversations with Kathy at Fischer Excavating and later had conversations with Joe Fischer. Joe Fischer initially told Peter Simon that

they submitted pay requests that the State of Illinois had not processed then later, Peter Simon was told that the State of Illinois shuts down in June at the end of their fiscal year and that no payments would be processed until July. At no time during their discussions with Fischer Excavating about the slow pay did Fischer Excavating ever question Iowa Based Milling's rate at $650 per hour. Iowa Based Milling returned to the job site on July 18 and milled on July 18, July 20, July 21 and July 22. Iowa Based Milling submitted an invoice dated July 28, 2011 for its work in July and applied the correct $650 per hour rate. (P. Exh. 7, p. Iowa Based Milling 173) Iowa Based Milling performed additional work on the Project on August 11, from August 25 through August 29, and September 1, 2011—invoicing this work as well. For the work performed on August 11 and September 1, the parties agreed to modify the terms of the contract to allow for billing at a rate of $1,000 per hour. (D. Exh. 2; D. Trial Brief at ECF p. 9).

After Iowa Based Milling finished its work on the Project, Peter Simon contacted Kathy at Fischer Excavating to inquire about being paid. (Tr. 82:2-19) Kathy told Peter Simon that Fischer Excavating did not know what Fischer Excavating owed Iowa Based Milling and that Peter would have to discuss the situation with Tony Gilbertson. *Id*. Peter Simon called Tony Gilbertson but did not receive any return calls. *Id.* In addition, Peter Simon made contact with Neo Lorenzo of Concrete Structures. Neo Lorenzo told Peter Simon that he would look into the nonpayment issue and get back to him. (Tr. 84:11-85:4) Neo Lorenzo failed to do that.

The last contact that Peter Simon had with Fischer Excavating was a September 22 telephone call from Joe Fischer. (Tr. 85:5-11) During that telephone call, Joe Fischer told Peter Simon that Fischer Excavating was going to pay $10,815. During that telephone call, Joe Fischer also made a comment threatening Iowa

Based Milling's business if it did not accept that payment in satisfaction of the outstanding invoices. (Tr. 85:12-15).

By this time, Fischer Excavating owed Iowa Based Milling $85,181.67 for its work on the oral contracts. Eventually, in October and November of 2011, Iowa Based Milling filed bond lien claims, containing an interest rate of 18% per annum. (P. Exh. 12 and 13) Iowa Based Milling also continued to bill Fischer Excavating for the accruing interest at 18% per annum. (P. Exh. 19).

## III

## A

Plaintiff Iowa Based Milling originally brought this action in federal court pursuant to the Miller Act. The Miller Act provides in relevant part:

> Every person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under section 3131 of this title and that has not been paid in full within 90 days after the day on which the person did or performed the last of the labor or furnished or supplied the material for which the claim is made may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought and may prosecute the action to final execution and judgment for the amount due.

40 U.S.C. § 3133(b)(1) (2006). Because the circumstances that gave rise to Iowa Based Milling's Miller Act claim also form the basis of its claims for breach of contract and fraud and misrepresentation and its bond claim under Illinois's Little Miller Act[4], the Court has supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367.[5]

---

[4] Illinois's Little Miller Act, 30 ILCS 550/0.01 *et seq.*, requires a public entity to require its contractors to post bonds to assure the payment of any money owed by the contractors to their subcontractors." *A.E.I. Music Network, Inc. v. Business Computers, Inc.*, 290 F.3d 952, 953 (7th Cir. 2002).

[5] The Plaintiff additionally stated in its Amended Complaint (Doc. 44) that this Court had jurisdiction on the basis of diversity of citizenship. On August 19, 2013, the Court directed Plaintiff Iowa Based Milling to file a supplemental jurisdictional statement properly alleging the subject matter jurisdiction of the Court.

Although, as the procedural history set forth in Section I, *supra*, demonstrates, this case involves several claims and remaining counterclaims and affirmative defenses, most of the claims and defenses in this case boil down to a simple question of contract formation, material terms, and breach.

A valid contract exists where there is an offer, acceptance, and consideration. *Clarendon Nat'l Ins. Co. v. Medina*, 645 F.3d 928, 936 (7th Cir. 2011), *citing Steinberg v. Chi. Med. Sch.*, 371 N.E.2d 634, 639 (1977). The elements of a cause of action for breach of contract, whether oral or written, are: 1) the existence of a valid and enforceable contract; performance by the plaintiff; breach of the contract by the defendant; and resultant damages or injury to the plaintiff. *Razor Capital v. Antaal*, 972 N.E.2d 1238, 1246 (Ill. App. Ct. 2012).

Here, as recounted by this Court in its findings of fact, two oral contracts were formed. The first oral contract, formed at the preconstruction meeting with Tony Gilbertson and Joe Fischer of Fischer Excavating and Peter Simon of Iowa Based Milling, had as its terms that Iowa Based Milling would mobilize to the Project to mill the required material for Fischer Excavating to construct the haul road at the price submitted on Iowa Based Milling's proposal and if Iowa Based Milling was unable to perform the work, it could quit the job. (Tr. 27:23-29:1; 29:24-30:20).

Iowa Based Milling completed its performance of this contract on April 18, 2011, when Peter Simon left the job after he concluded that he could not perform additional work. Under the terms of the oral contract, Fischer Excavating owed Iowa Based Milling $23,192.85. (P. Exh. 7, p. Iowa Based Milling 151). Fischer Excavating paid Iowa Based Milling a total of $36,511.18 between June and August

---

Iowa Based Milling complied by filing Affidavits (Docs. 40 and 41). Defendants Fischer Excavating and Western Surety subsequently identified the Court's jurisdiction over this matter as based upon of diversity of citizenship. *See* Defendants' Trial Brief (Doc. 112 at pg. 2).

2011 (P. Exh. 23). Accordingly, Fischer Excavating also performed its obligations under the oral contract reached at the preconstruction meeting and, consequently, it did not breach the first oral contract formed.

The second oral contract was formed when Iowa Based Milling agreed to return to the Project as needed at an hourly rate of $650. Under this agreement, Iowa Based Milling performed $98,500 in work, inclusive of the modification of the agreement for work performed on August 11 and September 1, as already noted. However, Fischer Excavating only paid $13,318.33 toward that amount, leaving an unpaid balance of $85,181.67.[6] Failure of Fisher Excavating to pay this outstanding balance to Iowa Based Milling constitutes a breach of the second oral contract. Moreover, Fischer Excavating has failed to prove any of its affirmative defenses on Iowa Based Milling's contract claims by a preponderance of the evidence.

**B**

The Court's findings as they relate to the formation of the oral contracts and Fischer Excavating's breach of the second of them resolve a number of the claims in this case. Specifically:

1.      Iowa Based Milling prevails on the breach of contract claim against Fischer Excavating in the amount of $85,181.67;

2.      Fischer Excavating prevails on Iowa Based Milling's quantum meruit and unjust enrichment claims, as it cannot recover under these theories where the Court has found that a contract exists. *See Midcoast Aviation, Inc. v. General Elec. Credit Corp.*, 907 F.2d 732, 736 (7th Cir. 1990); and

---

[6] Iowa Based Milling concedes that there was no discussion of mobilization charges when forming the second oral contract. However, the Court finds that mobilization charges were implied terms of the contract, especially given that Fischer Excavating at no time raised any objection to those charges from the time Iowa Based Milling invoiced Fischer Excavating to when Iowa Based Milling completed its work.

3.     Iowa Based Milling prevails on Fischer Excavating's remaining claim made in its Counterclaim.

4.     Iowa Based Milling prevails on its bond claims against Western Surety.

## IV

## A

In addition to its contract claims, Iowa Based Milling also alleges in its Amended Complaint a fraud and misrepresentation claim against Fischer Excavating. The core of this claim is that Fischer Excavating knowingly misled Iowa Based Milling by enticing them to continue work on the Project with assurances they would be paid for their work, while in actuality Fischer Excavating never intended to pay Iowa Based Milling.

The elements of a common law fraud/fraudulent misrepresentation claim are:  1) a false statement of material fact; 2) the defendant's knowledge that the statement was false; 3) the defendant's intent that the statement induce the plaintiff to act; 4) the plaintiff's reliance upon the truth of the statement; and 5) the plaintiff's damages resulting from reliance on the statement.  *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007), *citing Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 591 (Ill. 1996).

Iowa Based Milling's claim here fails because of insufficient evidence on the second element set forth above, *i.e.*, the defendant's knowledge of a false statement. After considering all the testimony presented at trial, the Court concludes that a genuine dispute arose between the parties regarding the agreements they made and the terms of those agreements.  This dispute, combined with delays in payments from Concrete Structures to Fisher Excavating, were the causes of the delays in payment and, ultimately, this litigation. Given the time sensitive nature of the milling work for the Project, both parties proceeded with

the assumption that their differences would get worked out eventually in a mutually satisfactory way. That, of course, did not happen, but the Court concludes that Fischer Excavating did not fraudulently induce Iowa Based Milling to continue work while intending to never pay them for that work. Likewise, any lone, idle threat Joe Fischer may have made to Peter Simon when the dispute over non-payment came to a head was immaterial to any issue in this case. Accordingly, Fischer Excavating prevails on Iowa Based Milling's fraud and misrepresentation claim.

## B

After the close of evidence, Iowa Based Milling also asserted it had a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act), 815 ILCS 505/1 *et seq.* Federal Rule of Civil Procedure 15(b) provides in relevant part:

> When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move--at any time, even after judgment--to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

FED. R. CIV. P. 15(b)(2). Given this Rule, the Court will consider whether Iowa Based Milling can prevail under the Consumer Fraud Act.

The Consumer Fraud Act does not require a plaintiff to prove all the elements of common law fraud. *Duran v. Leslie Oldsmobile, Inc.*, 594 N.E.2d 1355, 1361 (Ill. App. Ct. 1992). The relevant provision of the Consumer Fraud Act states:

> Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper . . . .

815 ILCS 505/10a(a) (2017).

Businesses have standing to sue under the Consumer Fraud Act in addition to "consumers" as that term is normally understood. *U.S. ex rel. Pileco, Inc. v. Slurry Sys., Inc.*, 872 F. Supp. 2d 710, 728 (N.D. Ill. 2012). Where the dispute involves two businesses, however, "the test for standing is whether the alleged conduct involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns." *Id*. (internal citations omitted). To prevail on a claim under section 10a(a) of the Consumer Fraud Act, a plaintiff must prove: 1) a deceptive act or practice by the defendant; 2) the defendant's intent that the plaintiff rely on the deception; 3) the occurrence of the deception in the course of conduct involving trade or commerce; and 4) actual damage to the plaintiff; 5) proximately caused by the deception. *Avery v. State Farm Mutual Automobile Ins. Co.*, 835 N.E.2d 801, 850 (Ill. 2005).

Even assuming Iowa Based Milling has standing to sue another business under the Consumer Fraud Act, which is doubtful, any claim under the Act fails for the same reasons already set forth in relation to the fraud and misrepresentation claim: Fischer Excavating was not being deceptive when it made representations that it would pay Iowa Based Milling for its work at the time those misrepresentations were made. It intended to pay Iowa Based Milling at the time such representations were made and only ultimately refused to do so when the parties could not resolve their differences regarding the agreements into which they entered.

## C

Given the Court's conclusion that Fischer Excavating prevails on Iowa Based Milling's common law fraud and misrepresentation claim and its statutory

claim under the Consumer Fraud Act, it follows that Iowa Based Milling is entitled to neither treble damages nor attorney fees under the Consumer Fraud Act.[7]

Likewise, Iowa Based Milling is not entitled to attorney fees under any other theory. The exceptions to the American Rule – that attorney's fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing for such – include: 1) where a successful party's opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons attorney's fees may be awarded; 2) where a successful litigant has conferred a substantial benefit on a class of persons and the court's shifting of fees operates to spread the cost proportionately among the members of the benefited class; and 3) where the expense of litigation may be a formidable if not insurmountable obstacle to the private litigation necessary to enforce important public policies. *F.D. Rich Co., Inc. v. U.S. for Use of Indus. Lumber Co., Inc.*, 417 U.S. 116, 129-30 (1974). None of these factors are present in this case. Moreover, while Iowa Based Milling prevails on its contract claim, it did not prevail on its fraud claims. Accordingly, this not an appropriate case to vary from the American Rule.

## V

Two final issues remain to be resolved: 1) whether the Defendants are entitled to a "set off" in light of the fact that Defendants Concrete Structures and Continental Casualty settled this case with Iowa Based Milling for $85,181.67 — the exact amount owed to Iowa Based Milling on the outstanding invoices; and 2) whether Iowa Based Milling is entitled to prejudgment interest.

---

[7] Attorney's fees may be awarded to the prevailing party under section 10a(c) of the Consumer Fraud Act: "[I]n any action brought by a person under this Section, the Court may grant injunctive relief where appropriate and may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party." 815 ILCS 505/10a(c). An attorney fee award pursuant to section 10a(c) to a prevailing plaintiff is not automatic. *Krautsack v. Anderson*, 861 N.E.2d 633, 646 (Ill. 2006) (emphasizing that while a plaintiff is entitled to petition the court for an award of attorney fees and costs pursuant to section 10a(c), the award of fees is discretionary, not mandatory).

Under Illinois law, the term "setoff" is used in two distinct ways. Setoff can be used to "refer[] to situations when a defendant has a distinct cause of action against the same plaintiff who filed suit against him and is subsumed procedurally under the concept of counterclaim." *Thornton v. Garcini*, 928 N.E.2d 804, 811-12 (Ill. 2010). The other use of "setoff" refers to "a defendant's request for a reduction of the damage award because a third party has already compensated the plaintiff for the same injury. *Id.* at 812. An example of the latter is when a codefendant who would be liable for contribution settles with the plaintiff. *Id.* The former type of setoff must be raised in the pleadings whereas the latter type of setoff may be raised at any time. *Id.* In this case, Defendant Fischer Excavating brought a setoff-type claim in its Counterclaim for breach of contract against Plaintiff Iowa Based Milling. Defendants Fischer and Western Surety also raised the issue of setoff before trial.

Though Defendants Fischer Excavating and Western Surety cite to the Illinois Joint Tortfeasor Contribution Act as support for their argument that they are entitled to a setoff from any judgment entered in Plaintiff Iowa Based Milling's favor due to Iowa Based Milling's settlement with Defendants Concrete Structures and Continental Casualty, their reliance upon that Act is misplaced. "If either party's liability to the injured party is premised solely on a contract theory, there can be no contribution action as contemplated by the Contribution Act." *North American Van Lines, Inc. v. Pinkerton Sec. Systems, Inc.*, 89 F.3d 452, 457 (7th Cir. 1996) (citations omitted). Notably, the cases cited by both parties regarding setoff involved torts, not purely breach of contract actions.

However, one Illinois appellate court did address the type of "setoff" Fischer Excavating seeks in the context of a breach of contract case. In *Young Men's Christian Ass'n of Warren Cnty. v. Midland Architects, Inc.*, the plaintiff brought an

action to recover damages for breach of contract against various defendants. 529 N.E.2d 288, 289 (Ill. App. Ct. 1988). Before trial, the plaintiff received a settlement from the defendant general contractor and defendant roofing manufacturer. *Id*. Upon the remaining defendant challenging the way in which the trial court applied a setoff for the amount the other parties settled, the court explained:

> The law is well settled that, where there is a single and indivisible injury, the damages are inseparable, and any amounts received from any of the defendants must be deducted from the total damages sustained. (*Weaver v. Bolton* (2d Dist.1965), 61 Ill.App.2d 98, 209 N.E.2d 5.) Applicable to the case at bar is the holding in *Eberle v. Brenner* (4th Dist.1987), 153 Ill.App.3d 700, 702, 106 Ill.Dec. 144, 146, 505 N.E.2d 691, 693, where the court said:
>> "An injured person is entitled to one full compensation for his injuries, and a double recovery for the same injury is against public policy. [Citation.] Thus, a plaintiff who has recovered for his damages should have no basis to complain because a defendant benefited from a setoff."

*Id*. at 291.

This Court agrees with the reasoning of the court in *Young Men's Christian Ass'n.* Iowa Based Milling has one, discrete injury in this case—not receiving payment on its outstanding invoices. There can be no question that the settlement it received for $85,181.67 from Concrete Structures and Continental Casualty—the exact amount owed to Iowa Based Milling on the outstanding invoices—was to redress that injury.[8] To award Iowa Based Milling the same amount without setoff would be to provide an unwarranted windfall to Iowa Based Milling to which it is not entitled. The only injury which that settlement did not redress is prejudgment interest, which the Court addresses now.

---

[8] During the Bench Trial, Defendants' counsel stated that, "It is an uncontested fact in this case that Iowa Based Milling has received $85,181.67 from one of the other defendants, Concrete Structures of the Midwest." (Tr. 355:15-18) Wayne Fischer responded that he was aware of that fact. (Tr. 355:18-19)

**B**

Plaintiff IBM argues that a legal basis for a prejudgment interest award in its favor exists because several of its invoices served on Defendant Fischer Excavating included a claim for interest on the unpaid balance of 1.5% per month (18% per annum). *See Jada Toys, Inc. v. Chicago Import, Inc.*, No. 07 C 699, 2009 WL 3055370, at *8 (N.D. Ill. Sept. 18, 2009) (discussing the Original Official Comment to 2-207 of the UCC which states as an example of a term that does not materially alter the contract "a clause providing for interest on overdue invoices . . . where they are within the range of trade practice . . . ."), *citing Extel Corp. v. Cermetek Microelectronics, Inc.*, 539 N.E.2d 320, 323 (Ill. App. Ct. 1989) (discussing that under section 2-207 of the UCC, a clause providing for interest on overdue invoices does not constitute a material alteration of a contract).

While it could be said that interest is an implied term of a parties' contract pursuant to Illinois law, the Court does not find that the 18% per annum interest set forth in IBM's invoices was, in fact, an implied term of the parties' oral contract in this case. First, the parties' agreement was an oral one and no evidence was presented that the parties discussed the addition of an interest provision on invoices. In fact, the inclusion of the 18% per annum interest provision was not included in IBM's invoices to Fischer until November 2011. Second, there was no evidence presented that Plaintiff IBM and Defendant Fischer Excavating had any prior dealings during which time the parties included a clause for interest on overdue invoices. *See Union Carbide Corp. v. Oscar Mayer Foods Corp.*, 947 F.2d 1333, 1337 (7th Cir. 1991) (applying Illinois law when explaining that a term inserted by the offeree is ineffectual if the new term makes a material alteration in the sense that consent to it cannot be presumed and there is no showing that the offeror in fact consented to the alteration whether expressly or by silence against the background of a course of dealings). Third, interest of 18% per annum on

21

delinquent invoices would not have been contemplated by Defendant Fischer Excavating where it had already orally agreed to pay a high price for IBM's work on the Project, where it did not discuss a provision for interest on overdue invoices at the time the contract was formed, and where it did not at any time later discuss with IBM such a provision. Accordingly, there was no meeting of the minds as to whether or how much interest would be charged for outstanding invoices and the Court will not apply an 18% per annum interest rate to determine how much prejudgment interest IBM is owed.

The parties nevertheless appear to agree that a basis, if any, for prejudgment interest in favor of Plaintiff Iowa Based Milling in this case is found in the Illinois Interest Act. Under Illinois law, prejudgment interest may be awarded by statute, by agreement of the parties, or by equity considerations. *RRK Holding Co. v. Sears, Roebuck and Co.*, 563 F. Supp. 2d 832, 838 (N.D. Ill. 2008). 815 ILCS 205/2 states, in relevant part:

> Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing . . . and on money withheld by an unreasonable and vexatious delay of payment. In the absence of an agreement between the creditor and debtor governing interest charges, upon 30 days' written notice to the debtor, an assignee or agent of the creditor may charge and collect interest as provided in this Section on behalf of a creditor.

Illinois courts define an "instrument of writing" as one which establishes a creditor-debtor relationship. *Mut. Serv. Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 628 (7th Cir. 2001), *citing Servbest Foods, Inc. v. Emessee Indus., Inc.*, 403 N.E.2d 1, 13 (Ill. App. Ct. 1980); *see also ITQ Lata, LLC v. MB Fin. Bank, N.A.*, 317 F. Supp. 2d 844, 859 (N.D. Ill. 2004) (noting section 2's "instrument[s] of writing" include invoices). Also, damages must be fixed and easily ascertainable before

prejudgment interest may be awarded pursuant to section 2. *Mut. Serv. Cas. Ins. Co.*, 265 F.3d at 628.

The invoices provided by Iowa Based Milling to Fischer Excavating count as "instruments of writing," *ITQ Lata, LLC*, 317 F. Supp. 2d at 860; *Sherwin – Williams Co. v. Mark Charcoal Co., Inc.*, No. 80 C 4541, 1985 WL 3932, at *6 (N.D. Ill. Nov. 15, 1985); *see also*, *STOPS Enterprises, LLC v. United Medical Equip. Co.*, No. 12 CV 7763, 2014 WL 2699723, at *10 (N.D. Ill. June 13, 2014), and the calculation of prejudgment interest is easily ascertainable through a few simple mathematical operations.

Accordingly, the Court awards Iowa Based Milling interest on the unpaid balances of its invoices at a rate of five (5) percent per annum beginning 30 days from the date of each invoice up until the date of this Order. Specifically, the interest on the outstanding balances from 30 days of the invoice date to the date of this Order is as follows:

| INVOICE DATE | ACCRUAL DATE | OUTSTANDING BALANCE | INTEREST |
|---|---|---|---|
| 05/25/11 | 06/25/11 | $9,381.67 | $2,910.89 |
| 06/01/11 | 07/01/11 | $15,200 | $4,703.67 |
| 06/06/11 | 07/06/11 | $15,750 | $4,886.82 |
| 07/28/11 | 08/28/11 | $19,650 | $5,924.61 |
| 08/12/11 | 09/12/11 | $6,300 | $1,880.51 |
| 08/31/11 | 09/30/11 | $15,100 | $4,507.25 |
| 09/07/11 | 10/07/11 | $3,800 | $1,125.95 |
| **TOTAL** | | $85,181.67 | **$25,939.70** |

Accordingly, the Court awards Iowa Based Milling $25,939.70 in prejudgment interest as calculated above.

<h2 style="text-align:center">VI</h2>

For the reasons stated, *supra*, judgment shall be entered in this case as follows:

1. Judgment shall enter in favor of Iowa Based Milling on the breach of contract claim against Fischer Excavating and the bond claims against Western Surety in the amount of $85,181.67, offset by that same amount due to the settlement with Defendants Concrete Structures and Continental Casualty, for a total amount of $0.00;

2. Judgment shall enter in favor of Iowa Based Milling on Fischer Excavating's remaining count of its Counterclaim;

3. Judgment shall enter in favor of Fischer Excavating on Iowa Based Milling's quantum meruit, unjust enrichment, common law fraud and misrepresentation, and Consumer Fraud Act claims.

4. Prejudgment interest is awarded to Iowa Based Milling against Defendants Fischer Excavating and Western Surety in the amount of $25,939.70—that amount being calculated on the amount awarded to Iowa Based Milling prior to offset.

This case is terminated.

*It is so ordered.*

Entered on September 8, 2017.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE